SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SARATOGA

DAN MCGUIRE,

Plaintiff,

v.

MIDLAND CREDIT MANAGEMENT, INC., SELIP & STYLIANOU, LLP, CITIBANK, N.A. and SYNCHRONY BANK,

Defendants.

Index No:

Date Index No. Purchased ______________

**SUMMONS**

To the Person(s) Named as Defendant(s) Above:

PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff herein and to serve a copy of your answer on the plaintiff at the address indicated below within 20 days after the service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: June 1, 2026

David M. Barshay, Esquire
Barshay, Rizzo & Lopez, PLLC
445 Broadhollow Road | Suite CL18
Melville, New York 11747
Tel: (631) 210-7272
Fax: (516) 706-5055
Our File No.: BRL25214
*Attorneys for Plaintiff*

Defendant's Address:

Midland Credit Management, Inc.
c/o CORPORATION SERVICE COMPANY
80 State Street
Albany, New York 12207

Selip & Stylianou, LLP
199 Crossways Park Dr.
Woodbury, New York 11797

Citibank, N.A.,
28 Liberty Street
New York, New York 10005
Synchrony Bank,
140 Wekiva Springs Road
Longwood, Florida 32779

Venue: Plaintiff designates Saratoga County as the place of trial. The basis of this designation is Plaintiff's Residence in Saratoga County.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SARATOGA

| | |
|---|---|
| DANIEL MCGUIRE,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC., SELIP & STYLIANOU, LLP, CITIBANK, N.A., and SYNCHRONY BANK,<br><br>Defendants. | Index No:<br><br>**VERIFIED COMPLAINT** |

BRL ATTORNEYS | BARSHAY RIZZO & LOPEZ

Plaintiff Daniel McGuire, by and through the undersigned counsel, complains, states, and alleges against defendants Midland Credit Management, Inc., Selip & Stylianou, LLP, Citibank, N.A., and Synchrony Bank, as follows:

**PRELIMINARY STATEMENT**

1. This is an action to recover damages for negligence and substantially assisting in violations of the FDCPA and FCRA, and for violations of New York General Business Law § 349, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over defendants Midland Credit Management, Inc., Selip & Stylianou, LLP, Citibank, N.A., and Synchrony Bank because they regularly transact business within this district and county ("County"), derive substantial revenue from services rendered in this County, have committed tortious acts within this County, and have caused injury to persons within this County as described herein.

3. Venue is proper pursuant to C.C.A. § 301(a) because defendants reside in this County, and a substantial part of the events that gave rise to this action occurred in this County.

**PARTIES**

4. Plaintiff Daniel McGuire ("Plaintiff") is a natural person who is a citizen of the State of New York residing in Saratoga County, New York.

5. Defendant Midland Credit Management, Inc. ("MCM") is a company existing under the laws of the State of Kansas, with its principal place of business in San Diego, California.

6. MCM regularly collects or attempts to collect debts asserted to be owed to others.

7. MCM regularly collects or attempts to collect debts asserted to be owed to others by residents in this County.

8. MCM regularly collects or attempts to collect debts asserted to be owed to others by New Yorkers.

9. MCM is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

10. MCM is regularly engaged, for profit, in the collection of debts allegedly owed by consumers in this County.

11. MCM is regularly engaged, for profit, in the collection of debts allegedly owed by New York consumers.

12. The principal purpose of MCM's business is the collection of such debts.

13. The principal purpose of MCM's business in this County is the collection of such debts.

14. The principal purpose of MCM's business in New York is the collection of such debts.

15. MCM uses instrumentalities of interstate commerce, including telephones and the

mails, in furtherance of its debt collection business.

16. MCM uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business in this County.

17. MCM uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business in New York.

18. MCM derives substantial revenue from its debt collection services rendered in New York.

19. MCM has committed tortious acts within New York that have caused injury to consumers in this County.

20. MCM has committed tortious acts within New York that have caused injury to New Yorkers.

21. Defendant Selip & Stylianou, LLP ("S&S") is a company existing under the laws of the State of New York, with its principal place of business in Woodbury, New York.

22. S&S regularly collects or attempts to collect debts asserted to be owed to others.

23. S&S regularly collects or attempts to collect debts asserted to be owed to others by residents in this County.

24. S&S regularly collects or attempts to collect debts asserted to be owed to others by New Yorkers.

25. S&S is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

26. S&S is regularly engaged, for profit, in the collection of debts allegedly owed by consumers in this County.

27. S&S is regularly engaged, for profit, in the collection of debts allegedly owed by

BRL | BARSHAY RIZZO & LOPEZ ATTORNEYS

New York consumers.

28. The principal purpose of S&S's business is the collection of such debts.

29. The principal purpose of S&S's business in this County is the collection of such debts.

30. The principal purpose of S&S's business in New York is the collection of such debts.

31. S&S uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

32. S&S uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business in this County.

33. S&S uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business in New York.

34. S&S derives substantial revenue from its debt collection services rendered in New York.

35. S&S has committed tortious acts within New York that have caused injury to consumers in this County.

36. S&S has committed tortious acts within New York that have caused injury to New Yorkers.

37. Defendant Citibank, N.A. ("Citibank") is a national association bank, with headquarters located at 388 Greenwich Street, New York, NY 10013, and is wholly owned subsidiary of Citigroup Inc., a Delaware corporation, and is Citigroup, Inc.'s largest operating subsidiary in the United States. Citibank regularly engages in business in this County.

38. Defendant Synchrony Bank ("Synchrony") is a wholly owned subsidiary of

BRL ATTORNEYS BARSHAY RIZZO & LOPEZ

Synchrony Financial, a consumer financial services company headquartered in Stanford, Connecticut, doing business in the State of Delaware. Synchrony regularly engages in business in this County.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

39. MCM is a wholly-owned subsidiary of Encore Capital Group, which is one of the largest debt purchasers in the world. In 2024, MCM purchased a record amount of defaulted consumer debt, totaling $1 billion and collected $1.6 billion from consumers. At the end of 2024, MCM's estimated remaining collections exceeded $5 billion.

40. According to data provided by the Consumer Financial Protection Bureau (the "CFPB"), consumer complaints about debt buyers and collectors attempting to collect money not actually owed by the consumer are by far the most common of all complaints received by the Bureau every year, aside from credit reporting. MCM is near the top for the entire country in terms of the volume of such complaints against debt buyers.

41. In fact, in 2015, the CFPB entered into a Consent Order with MCM, *et al.*, for violations of the law, including the FDCPA, which required MCM, and related entities, to pay more than $42,000,000 in restitution and $10,000,000 civil penalty for i) failing to investigate disputes made by consumers, ii) forcing consumers to restart the dispute process each time a debt was transferred to a different debt collector, iii) falsely representing to consumers information regarding a debt when it was known or had reason to believe the information to be inaccurate, iv) engaging in scattershot litigation, v) preventing debt collectors from obtaining account-level documentation regarding consumer debts, vi) submitting affidavits to courts around the country with false or misleading testimony, vii) submitting affidavits to court around the country with false or misleading statements by sellers of the debt, viii) threatening and filing lawsuits to collect time-barred debts,



BRL ATTORNEYS BARSHAY RIZZO & LOPEZ

ix) training collectors to create urgency when collecting time-barred debt over the telephone, and x) sending settlement offers to collect time-barred debts without informing the consumer that the debt was time-barred.

42. In 2018, 42 States Attorneys General entered into a settlement with MCM, and related entities, for $6,000,000 related to deceptive debt collection and litigation practices, such as filing affidavits in courts across the country when the affiant lacked personal knowledge related to the statements in the affidavit and did not review the relevant files, also known as robo-signing.

43. Then, in 2020, the CFPB filed an action in the Southern District of California against MCM, *et al*., asserting MCM violated the 2015 Consent Order by continuing to engage in the prohibited conduct as stated in the 2015 Consent Order. See Bureau of Consumer *Financial Protection v. Encore Capital Group, Inc., et al.*, No. 20-cv-1750-GPC-KSC (S.D. Cal. Oct. 16, 2020) (entering stipulation of final judgment.).

BRL | BARSHAY RIZZO & LOPEZ | ATTORNEYS

44. Despite the foregoing, creditors, including Citibank and Synchrony, regularly transfer portfolios of debts purportedly owed by consumers to MCM for purposes of collection.

45. Plaintiff maintained personal credit card account with Citibank and Synchrony.

46. Due to financial difficulties, Plaintiff began to fall behind on payments owed on the credit cards.

47. Thereafter, Citibank and Synchrony transferred the Citibank account and Synchrony account, respectively, to MCM for purposes of collection.

48. Plaintiff received a letter, dated February 19, 2026, from S&S on behalf of MCM regarding the Citibank account (the "Citibank Letter"), and a letter, dated, February 20, 2026, regarding the Synchrony account (the "Synchrony Letter").

49. The Citibank Letter and Synchrony Letter were purportedly signed by attorney

Mitchell Selip.

50. Upon information and belief, attorney Mitchell Selip did not review the Citibank Letter or Synchrony Letter, or corresponding account files.

51. Upon information and belief, attorney Mitchell Selip did not sign the Citibank Letter or Synchrony Letter.

52. Mitchell Selip's signatures on the Citibank Letter and Synchrony Letter are as follows:

Citibank Letter




Synchrony Letter




53. However, examples of attorney Mitchell Selip's signature on other letters sent to consumers are as follows:




54. The use of an attorney name and alleged signature of the Attorney is intended to give the least sophisticated consumer the belief that there was meaningful attorney involvement prior to sending the letter.

55. Attorney Mitchell Selip was not meaningfully involved in the review of Plaintiff's Citibank account and Synchrony account prior to the sending of the Citibank Letter and Synchrony Letter.

56. The varying signatures of attorney Mitchell Selip, even just comparing the Citibank

BRL ATTORNEYS | BARSHAY RIZZO & LOPEZ

Letter and Synchrony Letter, underscores that attorney Mitchell Selip is not personally signing collections letters and reviewing consumers account files prior to the use of his name and signature on the collection letters.

57. S&S does not review the controlling agreement, in this case between MCM and Citibank, and MCM and Sychrony, to determine if the transfer was a true sale.

58. S&S files collection lawsuits on behalf of MCM without reviewing the applicable information related to the account.

59. The Citibank Letter and Synchrony Letter demanded payment from Plaintiff.

60. The Citibank Letter alleged that Plaintiff no longer owed money to Citibank, but now owed $4,859.49 to MCM, and the Synchrony Letter alleged that Plaintiff no longer owed money to Synchrony, but not owed $1,915.76 to MCM.

BRL | BARSHAY RIZZO & LOPEZ ATTORNEYS

61. However, Plaintiff was never involved in any transaction with MCM for $4,859.49 or $1,915.76 and never entered into any contract with MCM for the payment of $4,859.49 or $1,915.76. Plaintiff was never indebted to MCM, and was never indebted to MCM for $4,859.49 or $1,915.76. MCM never extended credit to Plaintiff for $4,859.49 or $1,915.76. MCM does not possess competent proof that Plaintiff owes $4,859.49 or $1,915.76 to MCM. MCM holds no legal right, title, or interest in $4,859.49 or $1,915.76 owed by Plaintiff.

62. Upon information and belief, MCM claims it purchased Plaintiff's Citibank account and Synchrony account from Citibank and Synchrony, respectively, and it is therefore entitled to payment from Plaintiff.

63. Upon information and belief, MCM's alleged purchase of Plaintiff's account was ostensibly made pursuant to a certain Master Account Sale Agreement, and a certain Account Sale Addendums. These agreements are referred to collectively herein as the "Master Account Sale

Agreement."

64. However, upon information and belief, the Master Account Sale Agreement, does not memorialize a "true sale" of Plaintiff's account from Citibank or Synchrony to MCM.

65. Upon information and belief, the Master Account Sale Agreement, does not memorialize a "true sale" of Plaintiff's account from Citibank or Synchrony to MCM because, *inter alia*, Citibank and Synchrony retain control with respect to Citibank accounts and Synchrony accounts, respectively, transferred to MCM.

66. Upon information and belief, the Master Account Sale Agreement, does not memorialize a "true sale" of Plaintiff's account from Citibank or Synchrony to MCM because, *inter alia*, Citibank and Synchrony retain audit rights over MCM with respect to Citibank accounts and Synchrony accounts, respectively, transferred to MCM.

67. Upon information and belief, the Master Account Sale Agreement, does not memorialize a "true sale" of Plaintiff's account from Citibank or Synchrony to MCM because, *inter alia*, Citibank and Synchrony retain the right to require MCM to provide regular reporting to Citibank and Synchrony with respect to Citibank accounts and Synchrony accounts, respectively, transferred to MCM.

68. Upon information and belief, the Master Account Sale Agreement, does not memorialize a "true sale" of Plaintiff's account from Citibank or Synchrony to MCM because, *inter alia*, Citibank and Synchrony retain the right to recall and/or repurchase and/or exchange the accounts from MCM with respect to Citibank accounts and Synchrony accounts, respectively, transferred to MCM.

69. Upon information and belief, the Master Account Sale Agreement, does not memorialize a "true sale" of Plaintiff's account from Citibank or Synchrony to MCM because, *inter*

*alia*, Citibank and Synchrony retain recourse from MCM with respect to Citibank accounts and Synchrony accounts, respectively, transferred to MCM.

70. Upon information and belief, other than the Master Account Sale Agreement, MCM claims no other right to payment from Plaintiff.

71. Despite the foregoing, MCM began reporting negative information regarding a Citibank account to the credit reporting agencies with an account number of 328132XXX and open date of July 24, 2024.

72. Equifax, Experian, and Trans Union are the three major consumer reporting agencies ("CRAs") in the United States, and regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

BRL | BARSHAY RIZZO & LOPEZ | ATTORNEYS

73. The reports of CRAs generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

74. The CRAs obtain consumer information from various sources. Some consumer information is sent directly to the credit reporting agencies by furnishers, and other information is independently gathered by credit reporting agencies from third party providers, vendors, or repositories, like computerized reporting services like PACER and Lexis-Nexis.

Docusign Envelope ID: D51434FF-CDBE-8931-831E-6B29C49392E5

75. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from credit reporting agencies to make lending decisions.

76. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRAs' consumer reports.

77. The information credit reporting agencies include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

78. FICO Scores are calculated using information contained in the consumer's report.

79. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

BRL | BARSHAY RIZZO & LOPEZ ATTORNEYS

80. FICO Scores factor in the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

81. "Payment history" refers to whether a consumer has paid his or his bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

82. The "amount of debt" a consumer owes has a major impact on their credit score. When a credit reporting agency reports a debt as outstanding when it is in fact discharged, the credit reporting agency indicates that a consumer's "amount of debt" is higher than it actually is, which

will undoubtedly impact a consumer's credit score.

83. Lenders also consider a consumer's debt-to-income ratio before deciding to extend credit or approve financing terms.

84. Debt-to-income compares the total amount a consumer owes to the total amount a consumer earns.

85. A consumer's income, however, is not included in their consumer report; only their amount of debt is.

86. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's debt-to-income will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest and lower credit limits).

BRL | BARSHAY RIZZO & LOPEZ ATTORNEYS

87. MCM's credit reporting negatively impacted Plaintiff's credit.

88. Plaintiff never has a Citibank account with an account number of 328132XXX and never opened a Citibank account on July 24, 2024.

89. It is believed that MCM's reporting is related to an account Citibank had previously reported negative information regarding but ceased reporting negative information regarding the Citibank account.

90. The algorithm of the credit reporting agencies is coded in such a way that negative reporting impacts a consumer's score more than positive reporting.

91. The algorithm of the credit reporting agencies is coded in such a way that a consumer's credit score does not increase to the same degree as the consumer's credit score decreased when a negative account is deleted.

92. When MCM began reporting the same account after Citibank ceased reporting, Plaintiff's credit score was negatively impacted a second time because the algorithm of the credit

reporting agencies understood the MCM reporting to be a new negative report.

93. MCM knows the foregoing, and uses credit reporting as a way to coerce consumers into paying MCM for debts not owed to MCM.

94. MCM's credit reporting negatively impacted Plaintiff's credit score.

95. MCM's credit reporting negatively impacted Plaintiff's creditworthiness.

96. Thereafter, Plaintiff became aware of the negative tradeline on his credit bureau reports from MCM.

97. In fact, Plaintiff spent approximately sixty (60) minutes reviewing his records and accessing his credit reports.

98. Further, MCM's credit reporting was viewed by third parties.

99. As a result of MCM's credit reporting, Plaintiff lost access to credit, including from Merrick Bank and Capital One, N.A.

100. As a result of MCM credit reporting, Plaintiff was approved for credit, but at a high interest rate, including from TAB Bank and PayPal.

101. In fact, Plaintiff was deterred from applying for credit as a result of MCM's credit reporting.

102. MCM's credit reporting of the Citibank account, the same account that Citibank ceased reporting is false, misleading, and/or deceptive.

103. MCM's credit reporting of the Citibank account, the same account that Citibank ceased reporting is unfair and/or unconscionable.

104. MCM's credit reporting of the Citibank account, the same account that Citibank ceased reporting is conduct the natural consequence of which is to harass, abuse, and/or oppress.

105. On or about November 25, 2025, Plaintiff sent a written dispute via USPS Certified

Mail to Equifax, Experian, and Trans Union regarding MCM's inaccurate and/or misleading reporting.

106. Plaintiff incurred over $18.00 mailing the disputes to the CRAs.

107. In fact, Plaintiff's dispute stated:

**MIDLAND CREDIT MANAGEMENT**
**328132XXX**

> I have never had an account with Midland Credit Management. I have never applied for credit with Midland Credit Management. I have never received credit from Midland Credit Management. I have never heard of Midland Credit Management. I do not owe any money to Midland Credit Management. My reports indicate an open date of July 24, 2024, however, I never opened an account with this entity. Midland Credit Management claims this account relates to a Citibank account; however, I have never had a Citibank account with the account number reported by Midland Credit Management. Further, even if Midland Credit Management's reporting is related to a Citibank account, Citibank has previously deleted any reporting. Therefore, Midland Credit Management's reporting is causing my credit score and creditworthiness to be impacted a second time for the Citibank account. The reporting is inaccurate or misleading and has negatively impacted my credit score and creditworthiness.

BRL | BARSHAY RIZZO & LOPEZ | ATTORNEYS

108. Plaintiff's dispute notified Equifax, Experian, and Trans Union that the information reported by MCM was inaccurate.

109. Once Equifax, Experian, and Trans Union each received the dispute from Plaintiff, each were required to provide notice of such dispute and request for re-investigation to the furnisher, in this case MCM.

110. Equifax, Experian, and Trans Union each transmitted notice of the dispute to MCM via an Automated Credit Dispute Verification form ("ACDV").

111. MCM was required to investigate Plaintiff's dispute in full upon receipt of the ACDVs, and by extension, notice of the inaccuracy.

112. After receiving this notice, in any subsequent voluntary reporting, MCM must then delete the tradeline or update the tradeline to correct inaccurate information, as well as include the

dispute notation on the Citibank account.

113. After receipt of Plaintiff's dispute, MCM re-reported the Citibank account as accurate to the CRAs.

114. However, if MCM properly investigated Plaintiff's disputes, MCM would have uncovered that its reporting was inaccurate and/or misleading.

115. All of MCM's actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

116. MCM is liable for the debt collectors it retains.

117. Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of MCM.

118. Plaintiff suffered actual harm by being the target of inaccurate and/or misleading credit reporting by MCM.

119. Plaintiff will continue to suffer harm even if MCM's credit reporting is deleted because the algorithm of the CRAs does not provide increases in a consumer's credit score to the same degree as the CRAs decrease a consumer's credit score.

120. Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

121. Plaintiff's injury-in-fact is traceable to the actions or inactions of MCM.

122. Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

123. As a result of MCM's conduct, Plaintiff suffered anxiety, stress, and feared that

Plaintiff would lose further access to credit and/or need to continue to pay higher interest rates.

124. As a result of MCM's conduct, Plaintiff became confused by the Citibank Letter because Plaintiff disputed MCM's reporting of the Citibank account prior to receiving the Citibank Letter.

125. The acts of MCM as described in this Complaint were performed by MCM or on MCM's behalf by their owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority. As such, all references to MCM in this Complaint shall mean MCM or their owners, officers, agents, and/or employees.

126. MCM's conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from MCM's conduct.

127. But for MCM's actions, Plaintiff would not have had to spend time searching his records.

128. But for MCM's actions, Plaintiff would not have had to spend time discussing this matter with his attorneys.

129. But for MCM's actions, Plaintiff would not have had to spend time reviewing his credit reports.

130. But for MCM's actions, Plaintiff would not have become aggravated, frustrated, worried, fearful, and distressed.

131. Plaintiff's anger and frustration continue to this day.

132. Plaintiff justifiably fears that, absent this Court's intervention, MCM will continue to use abusive, deceptive, unfair, and unlawful means in their attempts to collect the alleged debt and other alleged debts.

BRL | BARSHAY RIZZO & LOPEZ ATTORNEYS

133. Plaintiff justifiably fears that, absent this Court's intervention, MCM will ultimately cause Plaintiff further unwarranted economic harm.

134. Plaintiff justifiably fears that, absent this Court's intervention, MCM will ultimately cause Plaintiff further unwarranted harm to Plaintiff's credit rating.

135. Plaintiff justifiably fears that, absent this Court's intervention, Plaintiff will incur additional time and expense defending a lawsuit from MCM.

136. MCM communications caused Plaintiff wasted time, lost time, loss of enjoyment of life and the potential incurrence of fees.

137. MCM infringed upon Plaintiff's right to seclusion.

138. MCM infringed upon Plaintiff's right to quiet enjoyment of life.

139. MCM infringed upon Plaintiff's right to truthful information from debt collectors.

140. MCM infringed upon Plaintiff's right not to be harassed and oppressed by debt collectors.

141. MCM's conduct as described herein caused Plaintiff to suffer emotional distress, fear, confusion, anxiety, aggravation, annoyance, loss of time, loss of enjoyment of life, and the incurrence of attorneys' fees.

142. Plaintiff justifiably fears that, absent this Court's intervention, MCM will continue to use abusive, deceptive, unfair, and unlawful means in their attempts to collect the alleged debt and other alleged debts.

143. A favorable decision herein would serve to deter MCM from further similar conduct.

**- FIRST CAUSE OF ACTION -**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**

144. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

BRL | ATTORNEYS | BARSHAY RIZZO & LOPEZ

145. New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…" independent of whether these acts and practices constitute violations of any other law.

146. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded punitive damages.

147. Plaintiff is a consumer protected by New York General Business Law § 349.

148. MCM's debt collection business in New York, aimed purposefully at New York consumers, constitutes a "business, trade or commerce or the furnishing of a service" as contemplated by New York General Business Law § 349.

149. MCM violated New York General Business Law § 349 by using deceptive acts and unlawful practices in its debt collection business. This includes a pattern and practice of attempting to collect money from New York consumers without sufficient proof and competent business records establishing that the consumer owes the money sought, attempting to collect money from New York consumers without sufficient proof of the legitimate right, title, or interest in such money, attempting to collect money from New York consumers without being in possession of a credit agreement executed by the consumer, attempting to collect money from New York consumers without being in possession of any competent proof that the consumer agreed to pay money, and misrepresenting to New York consumers the amount of money owed and the consumer's obligation to pay such.

150. MCM's actions are consumer-oriented in that they are directed to, and targeted at, New York consumers. MCM's conduct has a broader impact on consumers at large as MCM has

acted similarly with hundreds of other New York consumers and has engaged in the same conduct described herein thousands of times. MCM's recurring conduct potentially impacts hundreds of similarly situated New York consumers, who, like Plaintiff, have been subjected to MCM's same unlawful collection attempts. Without judicial intervention MCM's conduct will likely continue to occur in the future. MCM's conduct is, therefore, harmful to the New York public at large.

151. MCM acted willfully and knowingly in its violations of New York General Business Law § 349. MCM's practices are repeatedly and regularly employed by MCM as part of its business plan. MCM engages in this practice because it is profitable and because it would be more costly for MCM to create a system to verify that the consumer actually owes the money sought and to ensure that MCM holds a legitimate right, title, or interest in the money. MCM engages in this practice for the sole purpose of maximizing its profits.

BRL | ATTORNEYS | BARSHAY RIZZO & LOPEZ

152. MCM's conduct as described herein was consumer-oriented in that it was directed to, and targeted at, New York consumers. MCM's conduct has a broader impact on consumers at large as MCM has acted similarly with thousands of other New York consumers.

153. As a direct and proximate result of MCM's violations of New York General Business Law § 349, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and punitive damages, together with costs and attorney's fees.

## - SECOND CAUSE OF ACTION -
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

154. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

155. Congress enacted the FDCPA upon finding that debt collection abuse by debt collectors was a widespread and serious national problem. *See* S. Rep. No. 95-382, at 2 (1977) *reprinted in* U.S.C.C.A.N. 1695, 1696; 15 U.S.C § 1692(a).

156. The purpose of the FDCPA is to protect consumers from deceptive or harassing actions taken by debt collectors, with the aim of limiting the suffering and anguish often inflicted by debt collectors. *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002).

157. To further these ends, "the FDCPA enlists the efforts of sophisticated consumers ... as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

158. The FDCPA is a strict liability statute, and a debt collector's intent may only be considered as an affirmative defense. *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). A single violation of the FDCPA is sufficient to establish civil liability against a debt collector. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).

BRL BARSHAY RIZZO & LOPEZ ATTORNEYS

159. Plaintiff is a "consumer" as that term defined by the FDCPA.

160. MCM is a "debt collector" as that term is defined by the FDCPA.

161. Selip is a "debt collector" as that term is defined by the FDCPA.

162. The alleged debt is a "debt" as that term is defined by the FDCPA.

163. The Citibank Letter and Synchrony Letter each are a "communication" as that term is defined by the FDCPA.

164. Each report to a credit reporting agency is a "communication" as that term is defined by the FDCPA.

165. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

166. MCM and/or S&S violated the following sections of the FDCPA: 1692d, 1692e,

and 1692f. By way of example and not limitation, MCM and S&S violated the FDCPA by: Using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; stating or implying an attorney was meaningfully involved in Plaintiff's account; misrepresenting the services rendered or compensation which may be lawfully received; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law; engaging in conduct the natural consequence of which is to harass, oppress, or abuse; and failing to provide accurate and clear information in the collection letter.

BRL ATTORNEYS | BARSHAY RIZZO & LOPEZ

167. MCM and S&S violated the FDCPA and is liable to Plaintiff for statutory damages of up to $1,000.00 plus costs and attorney's fees as provided for by Section 1692k of the FDCPA.

**- THIRD CAUSE OF ACTION -**
**NEGLIGENCE**

168. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

169. Independent of New York General Business Law § 349 and the FDCPA, creditors and debt collectors owe debtors a duty of reasonable care in the collection of debts.

170. MCM owed a duty to Plaintiff to exercise reasonable care in its attempts to collect money from Plaintiff.

171. MCM owed a duty to Plaintiff to exercise reasonable care in making representations of fact to Plaintiff concerning the alleged debt.

172. MCM owed a duty to Plaintiff not to attempt to collect money from Plaintiff that

Plaintiff did not owe.

173. MCM owed a duty to Plaintiff not to attempt to collect money from Plaintiff without sufficient proof and competent business records establishing that Plaintiff owed the money sought, not to attempt to collect money from Plaintiff without sufficient proof that MCM holds a legitimate right, title, or interest in such money, not to attempt to collect money from Plaintiff without being in possession of a credit agreement executed by Plaintiff, not to attempt to collect money from Plaintiff without being in possession of any competent proof that Plaintiff agreed to pay the money, and not to misrepresent to Plaintiff the amount of money owed and Plaintiff's obligation to pay such.

174. MCM breached these duties by attempting to collect money from Plaintiff without sufficient proof and competent business records establishing that Plaintiff owed the money sought, by attempting to collect money from Plaintiff without sufficient proof that MCM holds a legitimate right, title, or interest in such money, by attempting to collect money from Plaintiff without being in possession of a credit agreement executed by Plaintiff, by attempting to collect money from Plaintiff without being in possession of any competent proof that Plaintiff agreed to pay the money, by misrepresenting the amount of money owed and Plaintiff's obligation to pay such, by using false, deceptive or misleading representations or means in its attempt to collect money from Plaintiff, by misrepresenting the character, amount, or legal status of the alleged debt, by misrepresenting the services rendered or compensation which may be lawfully received, by threatening to take and actually taking an action prohibited by law, by using unfair or unconscionable means in its attempt to collect money from Plaintiff; by seeking to collect money from Plaintiff not expressly authorized by an agreement or permitted by law, and by failing to provide accurate and clear information in its collection letter.

175. As a direct and proximate result of MCM's negligence, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

**- FOURTH CAUSE OF ACTION -**
**NEGLIGENT MISREPRESENTATION**

176. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

177. MCM owed a duty to Plaintiff to exercise reasonable care in its attempts to collect money from Plaintiff.

178. MCM owed a duty to Plaintiff to exercise reasonable care in making representations of fact to Plaintiff concerning the alleged debt.

179. MCM owed a duty to Plaintiff to ensure that its collection letters contain accurate information.

BRL | BARSHAY RIZZO & LOPEZ ATTORNEYS

180. MCM owed a duty to Plaintiff to exercise reasonable care in making sure its collection letters do not contain inaccurate representations of fact.

181. MCM breached these duties by representing in its letter that Plaintiff owed money when such representation was based on insufficient documentation, by representing in its letter that Plaintiff owed money when such representation was not based on any competent proof that any entity assigned all that entity's interest in the alleged debt, by representing in its letter that Plaintiff owed money when such representation was not based on any credit agreement signed by Plaintiff, by representing in its letter that Plaintiff owed money when such representation was not based on any competent proof that Plaintiff agreed to pay such money, and by representing in its letter that Plaintiff owed money when MCM held no legal right, title or interest in any debt Plaintiff allegedly owed.

182. As a direct and proximate result of MCM's negligent misrepresentations, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive

damages.

**- FIFTH CAUSE OF ACTION -**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

183. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

184. MCM is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

185. The FCRA is a federal statute that broadly regulates the credit reporting agencies and furnishers of credit information. Among other things, the FCRA prohibits credit reporting agencies and furnishers from reporting incomplete or inaccurate information on a consumer's credit report.

BRL BARSHAY RIZZO & LOPEZ ATTORNEYS

186. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

187. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

188. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

189. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

190. The FCRA is intended to ensure consumer reporting agencies exercise their grave

responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

191. MCM violated 15 U.S.C. § 1681s-2(b) by continuing to report inaccurate information within Plaintiff's credit file with Experian, Trans Union, and Equifax; by failing to fully and properly investigate the Plaintiff's dispute; by failing to review all relevant information regarding Plaintiff's dispute; by failing to accurately respond to Plaintiff's dispute; by failing to correctly report results of an accurate investigation to every credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of its representations to the consumer reporting agencies.

BRL ATTORNEYS | BARSHAY RIZZO & LOPEZ

192. As a result of this conduct, action, and inaction of MCM, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

193. MCM's conduct, actions and/or inactions was willful, rendering it liable for actual or statutory, as well as punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

194. Plaintiff is entitled to recover costs and attorney's fees from MCM in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**- SIXTH CAUSE OF ACTION -**
**NEGLIGENCE**

195. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

196. Creditors owe a duty of care only to their own customers.

197. Creditors owe their own customers a duty of reasonable care in the collection of

debts.

198. Citibank owed a duty to Plaintiff as a customer of Citibank.

199. Citibank owed a duty to Plaintiff to exercise reasonable care in its attempts to collect money from Plaintiff.

200. Citibank owed a duty to Plaintiff to exercise reasonable care in the transfer of Plaintiff's account to MCM.

201. Citibank owed a duty to Plaintiff not to transfer Plaintiff's account to a debt collector that engages in unlawful, harassing, abusive, oppressive, unfair, and/or deceptive acts and practices when attempting to collect debts.

202. Citibank breached these duties by transferring Plaintiff's account to MCM without any regard for the unlawful, harassing, abusive, oppressive, unfair, and/or deceptive acts and practices that MCM engages in.

203. Citibank had actual knowledge, or in the alternative, constructive knowledge, of the unlawful, harassing, abusive, oppressive, unfair, and/or deceptive acts and practices that MCM engages in via public records and the control Citibank exercises over MCM regarding the accounts Citibank transfers to MCM. Examples include: requiring reporting to Citibank, auditing MCM, setting policies and procedures, and having the ability to recall accounts.

204. As a direct and proximate result of Citibank's negligence, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

## - SEVENTH CAUSE OF ACTION -
## Substantially Assisting Violations of the FDCPA and FCRA: Transfer of a Debt to a Debt Collector That Engages in False, Misleading, Deceptive, Unfair, Unconscionable, Harassing, Abusive, Oppressive, and/or Other Unlawful Conduct

205. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

206. Citibank transfers pools of consumer debts to MCM for purposes of collection.

BRL | BARSHAY RIZZO & LOPEZ | ATTORNEYS

BARSHAY RIZZO & LOPEZ BRL ATTORNEYS

207. Citibank participates in the placing and transfer of consumer debt portfolios and has the authority to control the transfers.

208. Citibank exercises control over MCM regarding the accounts Citibank transfers to MCM by requiring reporting to Citibank, auditing MCM, setting policies and procedures, and having the ability to recall accounts.

209. Citibank knows or should know that MCM engages in unlawful, harassing, abusive, oppressive, unfair, and/or deceptive acts and practices by conveying consumers' information to third parties, collecting debt not owed to MCM, and communicating with consumers who are represented by counsel.

210. Citibank and MCM engage in these practices to harass, oppress, or abuse consumers.

211. Citibank knowingly or recklessly assisted MCM in MCM's unlawful, harassing, abusive, oppressive, unfair, and/or deceptive acts and practices.

212. As a direct and proximate result of Citibank's conduct, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

## - EIGHTH CAUSE OF ACTION -
## NEGLIGENCE

213. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

214. Creditors owe a duty of care only to their own customers.

215. Creditors owe their own customers a duty of reasonable care in the collection of debts.

216. Synchrony owed a duty to Plaintiff as a customer of Synchrony.

217. Synchrony owed a duty to Plaintiff to exercise reasonable care in its attempts to collect money from Plaintiff.

218. Synchrony owed a duty to Plaintiff to exercise reasonable care in the transfer of Plaintiff's account to MCM.

219. Synchrony owed a duty to Plaintiff not to transfer Plaintiff's account to a debt collector that engages in unlawful, harassing, abusive, oppressive, unfair, and/or deceptive acts and practices when attempting to collect debts.

220. Synchrony breached these duties by transferring Plaintiff's account to MCM without any regard for the unlawful, harassing, abusive, oppressive, unfair, and/or deceptive acts and practices that MCM engages in.

221. Synchrony had actual knowledge, or in the alternative, constructive knowledge, of the unlawful, harassing, abusive, oppressive, unfair, and/or deceptive acts and practices that MCM engages in via public records and the control Synchrony exercises over MCM regarding the accounts Synchrony transfers to MCM. Examples include: requiring reporting to Synchrony, auditing MCM, setting policies and procedures, and having the ability to recall accounts.

BRL | BARSHAY RIZZO & LOPEZ | ATTORNEYS

222. As a direct and proximate result of Synchrony's negligence, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

**- NINTH CAUSE OF ACTION -**
**Substantially Assisting Violations of the FDCPA: Transfer of a Debt to a Debt Collector That Engages in False, Misleading, Deceptive, Unfair, Unconscionable, Harassing, Abusive, Oppressive, and/or Other Unlawful Conduct**

223. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

224. Synchrony transfers pools of consumer debts to MCM for purposes of collection.

225. Synchrony participates in the placing and transfer of consumer debt portfolios and has the authority to control the transfers.

226. Synchrony exercises control over MCM regarding the accounts Synchrony transfers to MCM by requiring reporting to Synchrony, auditing MCM, setting policies and

procedures, and having the ability to recall accounts.

227. Synchrony knows or should know that MCM engages in unlawful, harassing, abusive, oppressive, unfair, and/or deceptive acts and practices by conveying consumers' information to third parties, collecting debt not owed to MCM, and communicating with consumers who are represented by counsel.

228. Synchrony and MCM engage in these practices to harass, oppress, or abuse consumers.

229. Synchrony knowingly or recklessly assisted MCM in MCM's unlawful, harassing, abusive, oppressive, unfair, and/or deceptive acts and practices.

230. As a direct and proximate result of Synchrony's conduct, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

BRL ATTORNEYS | BARSHAY RIZZO & LOPEZ

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests the following relief:

a. A determination that defendants have committed the violations of law alleged in this action.

b. Actual, treble, exemplary, punitive, and statutory damages against MCM and S&S in the amount of $50,000.00.

c. Actual, treble, exemplary, and punitive damages on Plaintiff's negligence causes of action against Citibank and Synchrony; and

d. Actual, treble, exemplary, and punitive damages on Plaintiff's Substantially Assisting causes of action against Citibank and Synchrony; and

e. The costs of this action and attorneys' fees calculated pursuant to the lodestar method.

f. Pre-judgment and post-judgment interest as allowed by law; and

g. Such other and further relief that the Court determines is just and proper.

Docusign Envelope ID: D51434FF-CDBE-8931-831E-6B29C49392E5

DATED: May 17, 2026

By: ______________________
David M. Barshay, Esquire
BARSHAY, RIZZO & LOPEZ, PLLC
445 Broadhollow Road | Suite CL18
Melville, New York 11747
Tel: (631) 210-7272
Fax: (516) 706-5055
Our File No.: BRL25214
*Attorneys for Plaintiff*

BRL | BARSHAY RIZZO & LOPEZ | ATTORNEYS

**VERIFICATION**

Daniel McGuire, being duly sworn, deposes and says that I am the plaintiff in this action against Midland Credit Management, Inc., Selip & Stylianou, LLP, Citibank, N.A., and Synchrony Bank. I have read this complaint and affirm that the contents thereof are true, except as to matters alleged on information and belief, and as to those matters, I believe them to be true.

Verified by the undersigned on May 17, 2026.

Signed by:
Daniel McGuire
C3C6AF740AC74E4...
______________________
Daniel McGuire

Index No:
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF

DAN MCGUIRE,

Plaintiff,

-against-
MIDLAND CREDIT MANAGEMENT, INC.,
SELIP & STYLIANOU, LLP,
CITIBANK, N.A. and SYNCHRONY BANK,

Defendants.

**SUMMONS AND COMPLAINT**

BARSHAY, RIZZO & LOPEZ, PLLC
*Attorneys for Plaintiff*
*445 Broadhollow Road | Suite CL18*
*Melville, New York 11747*
*Tel: (631) 210-7272*

*I hereby certify pursuant to 22 NYCRR § 130-1.1-a that, to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the papers listed below or the contentions therein are not frivolous as defined in 22 NYCRR § 130-1.1(c):*

____________________________
David M. Barshay, Esquire

Dated: June 1, 2026

Service of the within ____________________________ is hereby admitted.

__________________________ Dated: ________, 20__

Attorneys for ____________________